COURT OF APPEALS OF VIRGINIA


Present:   Judges McClanahan, Petty and Senior Judge Fitzpatrick
Argued at Alexandria, Virginia


PETER J. EISERT

                                              MEMORANDUM OPINION* BY
v.      Record No. 2990-06-4           JUDGE ELIZABETH A. McCLANAHAN
                                                 MARCH 18, 2008
DAWN M. EISERT


              FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                           James H. Chamblin, Judge

           Marcia M. Maddox (Katharine W. Maddox; Morgan A. Leyh;
           Maddox, Cole & Miller, P.C., on briefs), for appellant.

           Nan M. Joseph (Joseph & Mische, P.C., on brief), for appellee.


       Peter J. Eisert (husband) appeals from a final decree of divorce from Dawn M. Eisert

(wife).  He contends the trial court erred in:  determining the amount and duration of the spousal

support award to wife, determining the amount of the child support award, and awarding

attorney's fees to wife.  For the following reasons, we affirm the trial court.

                                   I.  BACKGROUND

       In reviewing the trial court's decision on appeal, we view the evidence in the light most

favorable to wife, the prevailing party, granting her the benefit of any reasonable inferences.

Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003).  "That principle

requires us to discard the evidence of [husband] which conflicts, either directly or inferentially,

with the evidence presented by [wife] at trial."  Id. (citations and internal quotation marks

omitted).

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The parties married in 1994, and had a son, born in 1998, and a daughter, born in 2001. During the first four years of their marriage, they both worked for their jointly owned insurance business, Tresie, Inc., a/k/a Eisert Insurance Service (EIS). Husband sold insurance, and wife managed the administrative duties. Wife then stayed at home after the birth of their first child, but continued to do administrative work from home. The business grew significantly during the course of the marriage.

The parties separated in July 2004, and wife filed for divorce later that year. Before the trial, the parties resolved the issues of custody and equitable distribution of marital property by stipulation. Among other things, wife received primary physical custody of the children and husband acquired complete ownership of EIS. In September 2006, the trial court conducted a three-day *ore tenus* hearing on the issues of spousal support, child support, and attorney's fees.

The trial court issued a letter opinion dated October 11, 2006, which it later incorporated into its final decree of divorce, dated November 13, 2006. The court awarded wife permanent spousal support in the amount of $15,000 per month for one year, and $13,500 per month thereafter. The court reduced the support after year one based on its imputation of income to wife. From expert testimony, the court found that by year two, following a period of retraining, wife could obtain employment in office administration paying $40,000 to $44,000 a year. In determining the support, the court calculated husband's income as $77,000 per month, which included approximated $73,000 per month from EIS. Furthermore, the court expressly stated in its letter opinion that it rendered the spousal support award after it "considered [husband's] substantial ability to pay and [wife's] realistic needs in light of the statutorily required factors for consideration under Va. Code § 20-107.1(E)."

Regarding child support, the court ordered husband to pay support for the two children in the amount of $2,943 per month, based on the court's child support guideline worksheet. Those

calculations did not include the cost of health insurance for the children. Rather, the court ordered husband to continue to provide health insurance for them through EIS. The child support award also did not include the cost of the children's private school tuition, totaling $2,157 per month, which the court ordered husband to pay separately.

Finally, the trial court awarded wife attorney's fees in the amount of $60,000.

Husband filed a motion to reconsider, and then written objections, to the court's final order, all of which were denied.

## II. ANALYSIS

Husband raises ten issues on appeal. Six issues relate to the award of spousal support, three issues relate to the award of child support, and one issue relates to the award of attorney's fees. Husband contends the trial court, when determining the spousal support award to wife, erred in: (i) accounting for certain needs of the parties' children as an expense to wife; (ii) accounting for wife's income tax liability; (iii) assessing the parties' standard of living relative to wife's needs; (iv) failing to reduce the monthly support amount for year one by an amount equal to wife's monthly imputed income beginning in year two; (v) making the support permanent; and (vi) calculating husband's income. As to the child support award, husband contends the trial court erred in: (i) calculating the parties' gross incomes; (ii) excluding the cost of the children's health insurance; and (iii) allocating the full cost of the children's private school tuition to husband. Finally, husband challenges the trial court's award of attorney's fees to wife.

## A. Waiver

Husband states that the issues above were preserved for appeal in his motion to reconsider and/or his written objections filed in response to the court's letter opinion and subsequent final decree. However, husband did not argue in those pleadings, as he does on appeal, that when determining spousal support the trial court erroneously included as part of

wife's living expenses: (i) certain needs of the children, which he contends should have been included in the assessment of child support; and (ii) wife's income tax liability, which he contends the trial court calculated without actually knowing wife's income tax bracket. Nor did husband assert in those pleadings that the trial court erroneously calculated the parties' gross incomes when determining child support.

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Furthermore, "[n]ot just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." Thomas v. Commonwealth, 44 Va. App. 741, 750, 607 S.E.2d 738, 742 (emphasis in original), adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005); see also Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*); Torian v. Torian, 38 Va. App. 167, 185-86, 562 S.E.2d 355, 364-65 (2002). Rule 5A:18 thus bars our consideration of the three above-stated issues in this appeal. Furthermore, the record does not indicate any reasons to invoke the good cause or ends of justice exceptions to this rule.

B. Spousal Support

Our review of the spousal support award is governed by familiar principles. The trial court has "broad discretion" in the decision to award spousal support. Miller v. Cox, 44 Va. App. 674, 679, 607 S.E.2d 126, 128 (2005) (citing Brooks v. Brooks, 27 Va. App. 314, 317, 498 S.E.2d 461, 463 (1998)). That includes the "nature, amount and duration" of the award. Code § 20-107.1(E) (listing thirteen factors for consideration). In making that determination, the court must consider all the factors listed in Code § 20-107.1(E); it is not required, however, "to quantify or elaborate exactly what weight or consideration it has given to each of the statutory

factors." Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986). When the court has duly considered those factors, "its determination 'will not be disturbed except for a clear abuse of discretion.'" Dodge v. Dodge, 2 Va. App. 238, 246, 343 S.E.2d 363, 367 (1986) (quoting Thomasson v. Thomasson, 225 Va. 394, 398, 302 S.E.2d 63, 66 (1983)). Accordingly, we will reverse the trial court only when its exercise of discretion is "'plainly wrong or without evidence to support it.'" Northcutt v. Northcutt, 39 Va. App. 192, 196, 571 S.E.2d 912, 914 (2002) (quoting Moreno v. Moreno, 24 Va. App. 190, 194-95, 480 S.E.2d 792, 794 (1997)).

Parties' Standard of Living

Husband argues the trial court abused its discretion by awarding wife permanent spousal support in an amount "far in excess" of her needs, in light of the "parties' exceptionally frugal lifestyle." See Miller, 44 Va. App. at 684, 607 S.E.2d at 131 ("The purpose of spousal support 'is to provide a sum for such period of time as needed to maintain the spouse in the manner to which the spouse was accustomed during the marriage, balanced against the other spouse's ability to pay.'" (quoting Blank v. Blank, 10 Va. App. 1, 4, 389 S.E. 2d 723, 724 (1990))). The facts, however, negate this argument.

Husband asserts that wife's "realistic need" for spousal support was $5,648 per month "before inclusion of any employment income." The trial court's award of $15,000 per month for the first year, and $13,500 per month thereafter, was, indeed, far more than the above-stated figure. Contrary to husband's assertion as to wife's financial needs, however, the trial court found that wife's reasonable monthly living expenses exceeded $10,000 per month[1] and that, after taxes, "[wife] will only have about $10,000 left over per month [from a support award of $15,000 per month] to meet her needs." The court further found that wife's only other source of

---

[1] The trial court reached this conclusion upon discounting wife's claim of monthly living expenses, in the amount of $13,682, after analyzing wife's monthly income and expense statement in detail, as set forth in the court's letter opinion.

- 5 -

income, for purposes of determining spousal support, was rental income in the amount of $807 per month from property she received under the parties' equitable distribution agreement. These two sources of income combined thus do not far exceed, if at all, wife's reasonable monthly living expenses, as found by the court. And, all of these findings of the trial court are supported by evidence in the record.

Furthermore, Code § 20-107.1(E) did not require the trial court to fashion a support award that simply met wife's monthly living expenses, to the extent the award, along with wife's rental income, exceeded those expenses. See Miller, 44 Va. App. at 684-86, 607 S.E.2d at 131-32 (applying Code § 20-107.1(E)). When assessing the parties' standard of living for support purposes, a trial court may also account for "the parties' pattern and custom of saving and investing a . . . portion of their income." Id. at 685-86, 607 S.E.2d at 131-32. Here, the parties, consistent with their frugal lifestyle, saved and invested a large portion of their income. Accordingly, to the extent the total of wife's support award and rental income exceeded her monthly living expenses, the award justifiably allowed her to both "meet her monthly living expenses and . . . continue to save money and invest it." Id. at 686, 607 S.E.2d at 132. And, in fact, any such excess sums representing wife's opportunity for saving and investing will be, at best, modest, compared to what she was accustomed during the marriage.

Wife's Imputed Income

Next, husband argues, in effect, that the trial court erred as a matter of law in failing to reduce wife's initial monthly support award in year one by an amount equal to her monthly imputed income beginning in year two. The trial court awarded wife spousal support in the amount of $15,000 per month in year one, imputed income to her beginning in year two in the amount of $40,000 to $44,000 a year, or from $3,333 to $3,667 per month, and reduced her spousal support, beginning in year two, from $15,000 to $13,500 per month, for a reduction of

$1,500 per month.  Husband contends the $1,500 reduction was erroneous, as it should have been reduced by the imputed amount of between $3,333 and $3,667 per month.  Husband, however, cites no authority for requiring a dollar for dollar set-off between spousal support and imputed income, nor is there such a requirement under Virginia law.  See Code § 20-107.1.

Accordingly, we find no abuse of discretion in the manner in which the trial court reduced wife's spousal support award in year two in light of the income imputed to her at that time.[2]

### Duration of Spousal Support Award

As to the duration of the spousal support award, husband argues the trial court erred by awarding wife permanent support where the parties were married for a "relatively short duration" and wife was employable.  We disagree.

Code § 20-107.1(C) provides that "[t]he court, in its discretion, may decree that maintenance and support of a spouse be made in periodic payments for a defined duration, or in periodic payments for an undefined duration, or in a lump sum award, or in any combination thereof."  See also Code § 20-107.1(E).

Here, the parties were married for twelve years.  During that time, the parties' two children were born, reaching the ages of five and eight as of the time of the divorce.  The parties' insurance business, EIS, also grew substantially during those years.  For the first four years of marriage, husband sold insurance and wife "handled the administrative side of the business." After their first child was born, the parties agreed that wife would stay home with him, while still

---

[2] Husband asserts additional arguments as to why the trial court erred in using the figure of $1,500 per month for reducing the spousal support award based on the amount of wife's imputed income.  Those issues were not preserved for appeal under Rule 5A:18, and we, therefore, will not consider them.

doing some of her administrative duties from home, and husband would continue to work in the insurance business full time. This arrangement continued after the birth of their second child.

At the time of the divorce, husband acquired complete ownership of the insurance business under the terms of the parties' equitable distribution agreement. The trial court found that husband's income from the business, as sole owner, was approximately $73,000 per month. The court also found that husband would receive an additional sum of approximately $4,000 per month generated from an investment account and two of his rental properties. On the other hand, wife's earning capacity, after a period of retraining, would range from $40,000 to $44,000 per year, and her only other financial resource, apart from spousal support, was her rental income in the amount of $807 per month.

Under these circumstances, we cannot find the trial court abused its discretion in permanently awarding spousal support to wife.

### Husband's Income

Husband next argues the trial court erred in calculating his net income from EIS in the amount of approximately $73,000 per month. More specifically, husband contends that, when the court calculated the amount of income of this Subchapter S corporation attributable to him, as its sole stockholder, the court erred by failing to fully deduct EIS's business expenses from the company's annualized gross income for 2006. Husband's argument fails, as he presented no evidence on this issue.

Code § 20-107.1(E)(1) provides that, in determining spousal support, the trial court shall consider "the earning capacity, obligations, needs and financial resources of the parties." In Frazer v. Frazer, 23 Va. App. 358, 377-78, 477 S.E.2d 290, 299 (1996), we held that the calculation of gross income for the determination of spousal support should be no different than the calculation of gross income for purposes of determining child support, pursuant to Code

§ 20-108.2(C). This statute defines gross income, in relevant part, as follows: "For purposes of this section, 'gross income' means all income from all sources. . . . Gross income shall be subject to deduction for reasonable business expenses for persons with income from self-employment, a partnership, or a closely held business." Code § 20-108.2(C).

Wife presented documentary evidence showing EIS's commissions received, less payments for insurance premiums, for a five-month period in 2006, resulting in an annualized net income equal to approximately $73,000 per month, as the trial court found. Husband does not challenge the calculation of that figure to this point. His argument is that the court failed to reduce this amount by other business expenses of the company, which he contends were shown, as cancelled checks, on the same bank statements wife introduced to establish EIS's gross income. Indeed, in his reply brief, husband states: "Inasmuch as [wife] submitted into evidence copies of [husband's] checks evidencing EIS's business expenses there was no need for [husband] to provide additional testimony concerning such expenses because documents speak for themselves." It was husband's burden, however, to prove those expenditures were, in fact, reasonable business expenses of EIS. See Code § 20-108.2(C). Absent such evidence, the trial court accordingly found that "[husband] did not dispute that the Mercantile Bank statements for EIS ([wife's] Exhibits 80-82) show that it has had an average net income of approximately $73,000 per month through June 2006." Thus, on the record presented, we find no error in that ruling.

## C. Child Support

As with spousal support, the decision concerning child support "'rest[s] within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence.'" Joynes v. Payne, 36 Va. App. 401, 424, 551 S.E.2d 10, 21 (2001) (quoting Smith v. Smith, 18 Va. App. 427, 433, 444 S.E.2d 269, 274 (1994)). In making

- 9 -

that decision, the court must start by computing the presumptive monthly child support obligation of a party pursuant to the statutory guidelines set forth in Code § 20-108.2. Richardson v. Richardson, 12 Va. App. 18, 21, 401 S.E.2d 894, 896 (1991). The presumptive obligation may then be rebutted by evidence pertaining to the enumerated factors listed in Code § 20-108.1(B), including, *inter alia*, "the ability of each party to provide child support, the best interests of the child, the standard of living enjoyed by the family during the marriage, and other factors 'necessary to consider the equities for the parents and children.'" Ragsdale v. Ragsdale, 30 Va. App. 283, 295, 516 S.E.2d 698, 703-04 (1999) (quoting Code § 20-108.1(B)).

Cost of Health Insurance

In his opening brief, husband argues the trial court erred in failing to include the cost of the children's health insurance in its calculation of child support, referencing the court's child support guideline worksheet (prepared pursuant to Code § 20-108.2), which contained no entry for that item. Husband also cites Code § 20-108.2(E), which provides, in relevant part: "Any costs for health care coverage . . ., when actually being paid by a parent, to the extent such costs are directly allocable to the child or children, *and* which are the *extra costs of covering the child or children beyond whatever coverage the parent providing the coverage would otherwise have*, shall be added to the basic child support obligation." (Emphasis added). Despite the express language of this statutory provision, however, husband does not cite to any evidence presented to the trial court regarding the actual cost of health insurance for the children. In response, wife points out in her brief that the only evidence on this issue was that health insurance for the family was provided and paid for by EIS. Husband concedes this point in his reply brief, referring to one line out of the 2005 tax return for EIS, showing the total cost of the company's "employee benefit programs," as his only evidence on this issue.

The trial court thus clearly had no basis for including the cost of health insurance for the children in its child support calculations under Code § 20-108.2. Instead, the court ordered husband to provide health insurance for the children "as a benefit of [husband's] employment." See Code § 20-108.1(C) (authorizing the trial court, when determining child support, "to order a party to provide health care coverage . . . for dependent children if reasonable under all the circumstances"). Husband's argument on this issue is, therefore, without merit.

Cost of Private School Tuition

Husband also argues the trial court erred when it failed to include the cost of the children's private school tuition ($2,157 per month) in its calculation of child support pursuant to the Code § 20-108.2 guidelines, but, instead, allocated the full cost of tuition to him. A child's educational expenses are implicitly included in the presumptive amount of child support under Code § 20-108.2. Solomond v. Ball, 22 Va. App. 385, 391, 470 S.E.2d 157, 159 (1996); Smith, 18 Va. App. at 435, 444 S.E.2d at 275. We have held, however, that under the rebuttal provisions of Code § 20-108.1(B), "'a parent may be required to pay for private education expenses, even though such expenses exceed the guidelines, when there is a demonstrated need for the child to attend private school and the parent has the ability to pay.'" Joynes, 36 Va. App. at 424, 551 S.E.2d at 21 (quoting Ragsdale, 30 Va. App. at 295, 516 S.E.2d at 704). To impose such an obligation, the trial court must make written findings of fact, as required by Code § 20-108.1(B), justifying the deviation. See Princiotto v. Gorrell, 42 Va. App. 253, 260-61, 590 S.E.2d 626, 630 (2004). Husband contends the court failed to do so here when ordering him to pay all of the cost of tuition. We disagree.

The children's need to attend private school at Loudoun County Day School was not in dispute. As the trial court found, "[t]he parties agree that private school is necessary for the children." Furthermore, husband conceded at trial that he could afford to pay the school's

tuition. Thus, the court was only required to explain in writing why it was "unjust or inappropriate" for wife to share in the cost of tuition. Code § 20-108.1(B). In its letter opinion, the court reasoned that it would be "unfair" for wife to contribute to that cost, as her share would have to be paid from her spousal support payments, whereas husband "can easily afford to pay for it." Because of the large disparity in the parties' disposable incomes, we cannot say the trial court abused its discretion in reaching that conclusion and ordering husband to pay the full cost of tuition.

### D. Attorney's Fees Awarded by Trial Court

Finally, husband contends the trial court erred by awarding wife $60,000 in attorney's fees.

> Whether to award attorney's fees is a matter submitted to the sound discretion of the trial court and is reviewable on appeal only for an abuse of discretion. Given the unique equities of each case, our appellate review steers clear of inflexible rules and focuses instead on reasonableness under all the circumstances.

Smith v. Smith, 43 Va. App. 279, 289, 597 S.E.2d 250, 255 (2004).

In this case, the trial court found that wife had incurred attorney's fees and costs of approximately $130,000, and husband had incurred approximately the same amount. The court further found that the "fees [were] not unexpected considering the issues involved and the assets of the parties" and that "[w]ith significant separate assets [husband] is clearly in a better economic condition than is [wife]." Under these circumstances, particularly in light of the disparity of assets and incomes of the parties, we cannot say the trial court abused its discretion in awarding wife $60,000 in attorney's fees to be paid by husband, which represents less than half of the total fees and costs she incurred.

- 12 -

E.  Attorney's Fees Request on Appeal

Both parties request that this Court award attorney's fees incurred on appeal.  See

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996) (holding appellate

attorney's fees in domestic dispute may be awarded pursuant to Code § 20-99 upon specific

remand to trial court for determination of amount to be awarded).

> "The rationale for the appellate court being the proper forum to
> determine the propriety of an award of attorney's fees for efforts
> expended on appeal is clear.  The appellate court has the
> opportunity to view the record in its entirety and determine
> whether the appeal is frivolous or whether other reasons exist for
> requiring additional payment."

McGinniss v. McGinniss, 49 Va. App. 180, 190-91, 638 S.E.2d 697, 702 (2006) (quoting

O'Loughlin, 23 Va. App. at 695, 479 S.E.2d at 100).  On consideration of the record before us,

we decline to award either party attorney's fees and costs on appeal.

III.  CONCLUSION

For the above stated reasons, we affirm the judgment of the trial court.

Affirmed.

- 13 -