COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Elder and Kelsey
Argued at Chesapeake, Virginia

DONALD DAVIS

v.      Record No. 0758-07-1

LESA ROBINSON

MEMORANDUM OPINION[*] BY
CHIEF JUDGE WALTER S. FELTON, JR.
MARCH 18, 2008

FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
COUNTY OF JAMES CITY
E. Thomas Cox, Judge *Pro Tempore*

Lawrence D. Diehl (Barnes & Diehl, P.C., on brief), for appellant.

No brief or argument for appellee.

Donald Davis (father) appeals from a judgment of the Circuit Court of the City of

Williamsburg and County of James City (trial court) denying his petition for a reduction or a

termination of spousal support, and its calculation of child support using different income

amounts for each. He also seeks an award of his attorney's fees and costs on appeal. For the

reasons that follow, we affirm in part, reverse in part, and remand for further proceedings

consistent with this opinion.

I.  BACKGROUND

Under familiar principles, "we construe the evidence in the light most favorable to

[mother], the prevailing party below, granting to [her] evidence all reasonable inferences fairly

deducible therefrom." Northcutt v. Northcutt, 39 Va. App. 192, 195, 571 S.E.2d 912, 914

(2002). So viewed, the evidence established that father and Lesa Robinson (mother) were

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

divorced in December 2004. Two children were born of the marriage, "A," born in August 1987, and "B," born in July 1989. The final decree of divorce awarded the parties joint legal and shared physical custody of the children, who were to reside with each parent for approximately fifty percent of the year.

In December 2005, father petitioned the juvenile and domestic relations district court (district court) seeking a reduction in his spousal support payments as a result of his reduced employment income. He also sought a reduction in his child support payments as a result of his reduced employment income and the emancipation of the parties' older child, A. The district court denied father's petition for a reduction in spousal support, but granted his petition for a reduction in child support. Father and mother each appealed the district court's decision.

The trial court declined to reduce father's spousal support. It found that father was voluntarily underemployed, had failed to reduce his expenses to meet his decreased employment income, and had earned an unspecified income from real estate investment properties that he did not include in the gross monthly income figure he provided to the court. The trial court concluded the decrease in father's employment income did not constitute a material change in circumstances to warrant a modification in spousal support.

The trial court granted father's request to reduce his child support payments, stating in its letter opinion only that "[t]he parties have agreed there is a 50/50 shared custody arrangement. The lower Court ruling [that mother must pay father $45 monthly in] child support shall stand." The trial court adopted the district court's child support guideline calculation without further comment or recalculation.

This appeal followed.

## II.  ANALYSIS

### A.  Father's Spousal Support Obligation

Father contends the trial court erred in concluding his reduction in employment income did not constitute a material change in circumstances warranting a modification of his spousal support obligation, arguing that the trial court erred in (1) finding that he was voluntarily underemployed, (2) finding that he failed to make a good faith effort to reduce his expenses, (3) failing to consider mother's increase in employment income, and (4) failing to adjust overstated entries in mother's statement of expenses.

Code §§ 20-108 and 20-109 authorize a court to modify a decree concerning child or spousal support if the party seeking the modification proves "both a material change in circumstances and that this change warrants a modification of support."  Schoenwetter v. Schoenwetter, 8 Va. App. 601, 605, 383 S.E.2d 28, 30 (1989).  The material change "must bear upon the financial needs of the dependent spouse or the ability of the supporting spouse to pay."  Hollowell v. Hollowell, 6 Va. App. 417, 419, 369 S.E.2d 451, 452 (1988).  Additionally, a party seeking a reduction in support payments must

> "'make a full and clear disclosure relating to his ability to pay.  *He must also show that his lack of ability to pay is not due to his own voluntary act* or because of his neglect.'"  Edwards v. Lowry, 232 Va. 110, 112-13, 348 S.E.2d 259, 261 (1986) (emphasis added).  Thus, in order to prove a material change in circumstances that justifies a reduction in support, [he] "must establish that he is not 'voluntarily unemployed or voluntarily under employed.'"  Antonelli v. Antonelli, 242 Va. 152, 154, 409 S.E.2d 117, 119 (1991).

Hatloy v. Hatloy, 41 Va. App. 667, 672, 588 S.E.2d 389, 391 (2003) (quoting Virginia Dep't of Soc. Servs. v. Ewing, 22 Va. App. 466, 470, 470 S.E.2d 608, 610 (1996)).

"Where the trial court's decision [whether to modify support] is based upon an *ore tenus* hearing, its determination will not be disturbed on appeal unless it is plainly wrong or without evidence in the record to support it." Schoenwetter, 8 Va. App. at 605, 383 S.E.2d at 30.

Father contends the trial court erred in finding he was voluntarily underemployed. In December 2004, when the final decree of divorce was entered, father's monthly income from employment was $9,821. A computer programmer, he worked as an independent contractor for Affiliated Computer Services, Inc. (ACS). In July 2005, ACS informed him that it would not renew his contract, but that it would hire him as an ACS employee, although for less pay than he earned as an independent contractor. In October 2005, father accepted a position as an ACS employee, performing the same work and receiving a monthly income of $6,666, contrasted with $9,821 monthly he earned as an independent contractor with ACS.

Father's ACS manager testified that father's conversion from independent contractor to employee status resulted from ACS's decision to cease using domestic independent contractors, and to hire more employees and less-expensive independent contractors based in India. She stated that ACS's competitors were making similar changes in their hiring practices, although approximately half of the one hundred independent contractors formerly working for ACS rejected ACS's offer to convert to employee status. She also testified that father's current salary was at the "high end" of what an ACS-employed programmer with his experience could expect to earn.

Father testified that he informed a job placement agency in July 2005 that his independent contractor position would be ending, but "they weren't able to find anything for [him]." He conceded that he did not contact that agency a second time or make any other attempt to find a job that could provide him the same level of income he earned as an

independent contractor.  In December 2005, when father filed his petition seeking modification of his support obligations, his monthly income from employment remained at $6,666.

Father argues the trial court's finding that he was voluntarily underemployed was "based upon a totally speculative assumption . . . that higher paying jobs existed in [father's] field . . . and were available, that [father] could be hired for such a position, and that a further effort would have had positive employment results . . . "  However, father, as the party seeking to modify the existing court-ordered support obligation based on a reduction in income from employment, had the burden to prove that he was not voluntarily underemployed.  Hatloy, 41 Va. App. at 672, 588 S.E.2d at 391.  Although father argues that his testimony, combined with the testimony of his ACS manager, met that burden, "[i]t is well established that the credibility of witnesses and the weight accorded their testimony are matters solely within the purview of the trial court."  Id. at 674, 588 S.E.2d at 392.  Credible evidence in the record, including father's testimony that, except for one phone call, he made no effort to find a higher-paying job, supports the trial court's determination that father was voluntarily underemployed.  From the evidence presented, we conclude the trial court did not err in finding that father was voluntarily underemployed.

Because father was voluntarily underemployed, he failed to prove a material change in circumstances sufficient to warrant a reduction in spousal support.  Id. at 672, 588 S.E.2d at 391 (party seeking to prove material change in circumstances sufficient to justify reduction in support must prove he is not voluntarily underemployed).  Because we find the trial court did not err in finding father failed to prove a material change in circumstances warranting a reduction in spousal support, we need not address whether the trial court also erred in finding that father failed to reduce his expenses, whether it erred in failing to consider mother's increase in

employment income, or whether it erred in failing to adjust overstated entries in mother's statement of expenses.

## B. Father's Child Support Obligation

Father contends the trial court erred in its calculation of his child support obligation.

In its letter opinion, the trial court stated, without explanation, that "[t]he lower Court ruling [that mother must pay father $45 monthly in] child support shall stand." The record reflects that the district court's determination of the parties' child support obligations was predicated in part on its factual finding that father was not voluntarily underemployed. Its child support guidelines worksheet used father's actual employment income as his gross income. However, the trial court's factual finding on *de novo* review that father was voluntarily underemployed required it to impute income to him for the purposes of determining the parties' child support obligations. See Niemiec v. Dep't of Soc. Servs., 27 Va. App. 446, 451, 499 S.E.2d 576, 579 (1998) ("[E]xcept as provided in Code § 20-108.1(B)(3), a trial court determining child support is required to impute income to a parent who is found to be voluntarily underemployed." (citing Code § 20-108.1(B)(3))).

Additionally, in calculating child support, the trial court was required to include each party's income from all sources. See Code § 20-108.2(C) (defining "gross income" for purposes of Code § 20-108.2 as "all income from all sources"). Although the trial court found that father received income from his real estate investments, it did not quantify the amount of income father received, and did not include that income in calculating the parties' child support obligations.

Additionally, despite the parties' "50/50 shared custody arrangement" noted by the trial court in its letter opinion, the parties' testimony showed that B, the unemancipated child, was not actually living with father fifty percent of the time pursuant to the final decree of divorce. In determining child support, Code § 20-108.1(B) requires the trial court to "consider all evidence

presented relevant to any issues joined in that proceeding," including the actual custody arrangement of the parties. See Code § 20-108.1(B)(2).

From the record before us, we conclude the trial court erred in its determination of the parties' child support obligations under the child support guidelines.

C.  Attorney's Fees and Costs

Father seeks attorney's fees and costs on appeal.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear.  The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

McGinniss v. McGinniss, 49 Va. App. 180, 190-91, 638 S.E.2d 697, 702 (2006) (quoting O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996)).  On consideration of the record before us, we decline to award father his attorney's fees and costs incurred on appeal.

III.  CONCLUSION

On the record presented, we conclude the trial court did not err in finding father was voluntarily underemployed, or in finding that he failed to prove a material change in circumstances sufficient to warrant a reduction in spousal support.  However, we conclude that it erred in its determination of the parties' child support obligations under the child support guidelines by failing to impute income to father based on his voluntary underemployment, failing to include in its determination of child support the parties' income from all sources, and in failing to consider the actual custody arrangement of the parties.  Accordingly, we reverse and remand to the trial court to recalculate the parties' child support obligations.  We also decline to award father his attorney's fees and costs incurred on appeal.

For these reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

<u>Affirmed in part, reversed in part and remanded.</u>